**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 16, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KENNETH G. VIGIL,

      Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant - Appellee.

No. 14-1478
(D.C. No. 1:13-CV-01896-CBS)
(D. Colo.)

**ORDER**

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **McHUGH**, Circuit Judges.

The appellee has filed a motion to publish the order and judgment previously
issued on September 28, 2015. The motion is granted. The published opinion is filed
nunc pro tunc to that date and a copy is attached.

                Entered for the Court

                ELISABETH A. SHUMAKER, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 28, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KENNETH G. VIGIL,

      Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant - Appellee.

No. 14-1478

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:13-CV-01896-CBS)**
_____

Submitted on the briefs:[*]

Michael W. Seckar, Law Office of Michael W. Seckar, Pueblo, Colorado, for
Plaintiff-Appellant.

John F. Walsh, United States Attorney, Denver, Colorado, Douglas A. Fletcher, Special
Assistant U.S. Attorney, and John Jay Lee, Of Counsel, Regional Chief Counsel, Social
Security Administration, Office of the General Counsel, Denver, Colorado, for
Defendant-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **McHUGH**, Circuit Judges.
_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument.

**McHUGH**, Circuit Judge.

_____

Kenneth G. Vigil appeals from the denial of his application for disability insurance and supplemental security income benefits. Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

I.

Vigil filed for benefits alleging disability due to a bad left knee and ankle, anxiety, depression, and pain in his left heel and back. He requested and received a hearing before an administrative law judge ("ALJ") at which he was represented by counsel. Vigil and a vocational expert ("VE") testified.

The ALJ found that Vigil has severe impairments of degenerative changes of the lumbar spine, status post-left knee anterior cruciate ligament ("ACL") repair, obesity, major depressive disorder, and generalized anxiety disorder.[1] He then determined that Vigil could not perform his past relevant work as a fiberglass maker, spot welder, auto detailer, hog farmer, concrete laborer, or brick maker. The ALJ found that Vigil has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he can only occasionally bend, squat, and kneel; is unable to climb ropes, ladders, or scaffolds; can occasionally operate foot or leg controls; is unable to perform complex tasks, such that he is

_____

[1] We will not recite all of the medical evidence here. The parties are familiar with the evidence and the relevant medical evidence is described accurately and thoroughly in the magistrate judge's 24-page opinion and order. *See* Aplt. App. at 90-113.

limited to jobs with a specific vocational preparation ("SVP") of one or two;[2] and he

cannot deal with the general public. After considering the VE's testimony, the ALJ

determined Vigil could perform other work that existed in substantial numbers in the

national economy. Accordingly, the ALJ denied benefits at step five of the five-step

sequence for determining disability. *See Wall v. Astrue*, 561 F.3d 1048, 1052

(10th Cir. 2009) (summarizing steps). The Appeals Council denied review, and the

district court affirmed.

## II.

"We review the Commissioner's decision to determine whether the factual

findings are supported by substantial evidence and whether the correct legal

standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)

(internal quotation marks omitted). "In reviewing the ALJ's decision, we neither

reweigh the evidence nor substitute our judgment for that of the agency." *Newbold v.*

*Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

Vigil asserts two arguments on appeal: (1) the ALJ did not have a valid reason for

rejecting the standing and walking restrictions described by his consultative

physician, Dr. Summerlin, and (2) the ALJ improperly accounted for his memory and

concentration deficits by limiting the skill level of work.

---

[2] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991), 1991 WL 688702 (G.P.O.). A job at SVP one requires "a short demonstration only" and at SVP two requires "[a]nything beyond a short demonstration up to and including 1 month." *Id*.; *see also* SSR 00-4p, 2000 WL 1898704, at *3 ("unskilled work corresponds to an SVP of 1-2").

3

A.

Vigil first argues that the ALJ erred in evaluating the medical source opinion evidence from consultative examiner Dr. Summerlin when he determined Vigil's RFC. An ALJ must "give consideration to all the medical opinions in the record [and] discuss the weight he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted). When assessing a medical opinion, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) and give good reasons for the weight he assigns to the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2).

Vigil hurt his knee loading hay in 2006, but an x-ray showed intact osseous alignment, and there was no evidence of a fracture, cortical destruction, or joint effusion. Admin. R. at 213. A 2006 examination showed full range of motion in the left knee with no laxity or edema, and the only restriction on his ability to stand and walk in an eight-hour day was a requirement to take a five minute rest each hour. Vigil complained of back pain in 2006, but nerve studies of his low back and left leg were normal, and showed there was no evidence of lumber radiculopathy. *Id*. at 227. Vigil had surgery in May 2007 for an ACL tear in his left knee. All of the 2007 post-surgical examinations indicate that Vigil had some reduced range of motion in his knee but was improving at each visit. There are no medical records for Vigil after 2007, until he was seen by Dr. Summerlin in 2010.[3]

---

[3] The ALJ noted that Vigil was incarcerated between 2007 and 2010, during which time Vigil did not receive any treatment.

4

Vigil saw Dr. Summerlin only once, in August 2010, shortly after he filed for benefits. Dr. Summerlin opined that "[t]he number of hours [Vigil] could be expected to stand and/or walk in an eight hour workday would be up to four hours, due to left knee osteoarthritis and lumbar radiculopathy." *Id.* at 326.

The ALJ gave Dr. Summerlin's opinion moderate weight. He specifically determined that Dr. Summerlin's opinion that Vigil could only stand and walk for four hours was not consistent with Dr. Summerlin's exam findings:

> Consultative examiner Adam Summerlin, M.D. opined that the claimant was able to stand and/or walk for 4 out of 8 hours; lift 20 pounds occasionally and 20 pounds frequently; and was limited in the ability to stoop, crouch, kneel, and crawl. The undersigned gives this opinion moderate weight. The opinion was rendered after a thorough examination of the claimant and is somewhat consistent with the exam findings. However, the opinion is not clearly explained. While the limitations on carrying, lifting, and postural activities is basically consistent with the exam findings and the record as a whole, the limitations on standing and walking are not. Dr. Summerlin found normal range of motion of the knee, normal gait, and normal strength and tone. Dr. Summerlin does not reconcile the apparent discrepancy between these essentially normal findings and his opinion, and this detracts from the persuasiveness of his opinion.

Admin. R. at 18.

The ALJ's finding that Dr. Summerlin's restrictions on standing and walking were inconsistent with his own examination findings is a good reason for giving that medical opinion only moderate weight. *See* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion [and t]he better an explanation a source provides for an opinion, the

5

more weight [the ALJ] will give that opinion"). Further, the ALJ's assessment of Dr. Summerlin's opinion and examination results is supported by the record. Dr. Summerlin described Vigil as having a limp on the left leg but no need for any assistive device. His x-ray examination of Vigil's left knee showed only mild osteoarthritis, and his range of motion testing showed that Vigil had full, normal, active range of motion in his left knee and his spine. Admin. R. at 325. Dr. Summerlin also reported that Vigil had negative straight leg raises, intact deep tendon reflexes, and full muscle strength throughout. *Id*. at 326. These normal examination results do not indicate any inability to stand or walk for more than four hours in an eight-hour workday. As the ALJ noted, Dr. Summerlin did not give any explanation for the inconsistency between his stand/walk restriction and the actual examination results of his testing. The ALJ also recounted all of the other medical evidence in the record that indicated Vigil had a normal range of motion in his knee and spine, a normal walking gait, normal strength, and a fairly intact ability to walk and stand. The record supports the ALJ's evaluation of this evidence. The ALJ did not substitute his judgment for that of Dr. Summerlin or ignore Dr. Summerlin's findings. Rather, the ALJ considered all of Dr. Summerlin's medical evidence, as well as the record as a whole, and gave good reasons for the weight he afforded Dr. Summerlin's opinions. We see no error.

B.

Vigil next contends the ALJ failed to adequately account for his memory and concentration deficits in determining his RFC. The ALJ found at step three that Vigil

6

has moderate difficulties in concentration, persistence, and pace in social functioning. The ALJ took these difficulties into account in formulating Vigil's RFC by limiting the skill level of his work to work with an SVP one or two. Vigil contends the ALJ should have included in his RFC his specific concentration, persistence and pace limitations, rather than account for those limitations by restricting his RFC to unskilled (SVP one or two) work. Again, we find no error.

At steps two and three of the sequential analysis, the ALJ determines whether the claimant has a severe impairment (step 2) and whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (step 3). Here, the ALJ found at step three of the sequential process of evaluation that Vigil had only a moderate—not marked—limitation of concentration, persistence and pace. *See id.*, Listing 12.01, paragraph B (the "paragraph B criteria"). The social security ruling on assessing a claimant's RFC cautions that "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.

At the "more detailed" step four assessment of Vigil's RFC, *id.*, the ALJ found some evidence indicating that Vigil had some problems with concentration, persistence, and pace "such that [he] could not be expected to perform complex

7

tasks." Admin. R. at 17 (citing findings of impaired delayed recall, inability to spell in reverse, or recall the President's name). But, the ALJ further found that "the findings of a normal ability to recall items on immediate recall, and an ability to spell words forward, as well as finding of normal thought processes, indicate[d] that Vigil retain[ed] enough memory and concentration to perform at least simple tasks." *Id.*

Thus, the ALJ accounted for Vigil's moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work. There may be cases in which an ALJ's limitation to "unskilled" work does not adequately address a claimant's mental limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (recognizing that restrictions to unskilled jobs do not in all instances account for the effects of mental impairments). But in this case, we conclude that limiting the plaintiff to an SVP of only one or two, adequately took into account his moderate limitations in concentration, persistence, and pace. *See* Social Security Administration Program Operations Manual System § DI 25020.010, § B(3) (available at https://secure.ssa.gov/poms.nsf/lnx/0425020010 (last visited September 18, 2015) (noting that the capacity to perform unskilled work includes ability to maintain attention for extended periods of two-hour segments but that concentration is "not critical"). Unskilled work generally requires only the following: (1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing with changes

8

in a routine work setting." SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996).  The

evidence in the record regarding Vigil's mental status supports the ALJ's RFC

determination that limiting Vigil to perform unskilled work would adequately

account for his moderate limitations in concentration, persistence, and pace.

      The judgment of the district court is affirmed.