**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TINA CHRISTINE LANE,

      Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

      Defendant - Appellee.

No. 15-1253
(D.C. No. 1:14-CV-01797-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

Plaintiff Tina Christine Lane appeals from the district court's judgment

affirming the Commissioner's denial of her applications for disability insurance

benefits (DIB) and supplemental security income (SSI) benefits. She contends the

administrative law judge (ALJ) failed to account for one of her limitations in

determining her residual functional capacity (RFC). We have jurisdiction under

42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

BACKGROUND

Ms. Lane applied for DIB and SSI benefits in October 2011, alleging she became disabled on November 1, 2009. She has a high school education and has worked as a nurse assistant, payroll clerk, fast food worker, and cashier. At steps one and two of the five-step sequential evaluation, *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing steps), the ALJ found Ms. Lane had not worked since she became disabled and has severe impairments of cervical degenerative disc disease, obesity, gastritis, chronic obstructive pulmonary disease, anxiety, and depression. The ALJ found, at step three, that Ms. Lane's impairments did not meet or equal any of the listings for presumptive disability.

The ALJ then determined that Ms. Lane retains the RFC to perform light and sedentary work with the following limitations: the work must be low stress (defined as involving simple, routine tasks; no interaction with the public; no exposure to unprotected heights or dangerous or moving machinery; and no work requiring high production demands or that offer only piece-rate pay); no exposure to concentrated levels of pulmonary irritants such as fumes, odors, dusts, chemicals, or gases; no exposure to temperature or humidity extremes; and no work requiring her to repetitively move her neck up or down or side-to-side. The ALJ determined at step four that Ms. Lane could not return to her past relevant work, but based on the record, his RFC determination, and testimony from a vocational expert (VE), the ALJ found at step five that Ms. Lane can still perform other work. The Appeals Council

2

denied review, and a magistrate judge, sitting by consent of the parties, affirmed. Ms. Lane appeals.

## DISCUSSION

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Id.* (internal quotation marks omitted).

Ms. Lane asserts that in making his RFC determination, the ALJ failed to adequately account for a medical opinion that she can only accept supervision and interact with co-workers if the contact is not frequent or prolonged. Dr. Sexton, a state agency consultant, reviewed Ms. Lane's medical history and assessed her mental RFC. Dr. Sexton concluded Ms. Lane had no more than moderate limitations in any functional domain, and could perform a normal workday/workweek at a consistent pace without an unreasonable number and length of rest periods, as long as her work did not require more than simple instructions, ordinary routines, and simple decision making. Dr. Sexton also opined that Ms. Lane should have limited interaction with the general public, and could accept supervision and interact with co-workers "as long as contact is not frequent nor prolonged." Admin. R. Vol. 1, at 56.

The ALJ afforded Dr. Sexton's opinion substantial weight. But Ms. Lane argues the ALJ failed to expressly include in his RFC and his hypothetical questions

3

to the VE, Dr. Sexton's opinion that Ms. Lane could not tolerate frequent or prolonged contact with supervisors or co-workers. The magistrate judge rejected Ms. Lane's assertion that the ALJ had rejected Dr. Sexton's limitation on frequent or prolonged contact with supervisors or co-workers. The magistrate judge concluded the ALJ's RFC assessment was not in conflict with Dr. Sexton's opinion because the ALJ's limitation that Ms. Lane could only do low stress work involving only simple, routine tasks adequately accounted for the limitation on no frequent and prolonged interaction with supervisors and co-workers. The magistrate judge wrote: "[T]he ALJ did not err by asking the VE about low stress work instead of the specific restrictions outlined in Dr. Sexton's RFC . . . [because g]enerally, low stress jobs with simple, routine tasks have less interaction with the public, co-workers and supervisors." Aplt. App. at 137.

Ms. Lane contends the magistrate judge's ruling was based on a prohibited post-hoc rationalization. *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (holding the "court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself"). The Commissioner responds that the ALJ's "low stress" limitation implicitly accounted for the limitation on frequent or prolonged contact with supervisors and co-workers. The Commissioner argues the ALJ limited Ms. Lane to low stress work, which he defined as limited to simple, routine work; that simple, routine work is "unskilled" work, citing SSR 96-9P, 1996 WL 374185, at *9 (defining mental requirements of unskilled work to include "[u]nderstanding, remembering, and carrying out simple

4

instructions'); that unskilled work has been described as primarily "working with things (rather than data or people)" citing 20 C.F.R., Pt. 404, Subpt. P., App. 2, §§ 201.00(i), 202.00(g) (so stating in the context of whether English literacy is required for a job); thus, unskilled work primarily with objects would not, as a matter of common sense, involve frequent or prolonged interaction with supervisors or co-workers.

There are two problems with the Commissioner's argument. First, the Commissioner cites no statute, regulation, or decision to support its argument that "low stress" work, which the Commissioner equates with unskilled work, implicitly accounts for a limitation on frequent or prolonged interaction with supervisors or co-workers. "Unskilled" work requires the ability to "respond[] appropriately to supervision, co-workers and usual work situations." *Vigil*, 805 F.3d at 1204 (internal quotation marks omitted). But the Commissioner cites no authority for its premise that an inability to have frequent contact with supervisors and co-workers is consistent with an ability to respond appropriately to supervision. We have held that a limitation to "unskilled work" is generally insufficient to encompass a claimant's mental impairments, *see Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012), but have also held that an ALJ may specifically find and explain how a mental impairment is addressed by a limitation in skill level, *Vigil*, 805 F.3d at 1203-04. The ALJ did not provide such a finding or explanation in this case, however.

Second, it is unclear whether the ALJ incorporated or discredited the opinion of Dr. Sexton with regard to the supervisor and co-worker limitation. The ALJ's

5

RFC assessment requires that Ms. Lane have no contact with the public, and perform only low stress, simple, routine work, but says nothing of limiting contact with supervisors or co-workers. Without mention of the impairment in the ALJ's decision, we cannot determine whether the ALJ's "low stress" limitation implicitly accounted for the limitation on frequent interaction with supervisors and coworkers, as the Commissioner argues, or whether the ALJ rejected this limitation but failed to explain why he did so, as Ms. Lane argues.

It is clear the ALJ considered Dr. Sexton's opinion; indeed, he gave it substantial weight. Thus, we have no reason to conclude the ALJ rejected Dr. Sexton's limitation, as Ms. Lane argues. *Cf. Wall*, 561 F.3d at 1070 (When an "ALJ indicates he has considered all the evidence[, the court's] practice is to take the ALJ at his word." (brackets and internal quotation marks omitted)). Moreover, in assessing residual functional capacity, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo*, 682 F.3d at 1288. Nonetheless, the ALJ's lack of clarity is troubling, as we have urged ALJs to include reasoning in their decisions to make appellate review not only possible but meaningful. *See Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). If the ALJ meant to capture Dr. Sexton's limitation on frequent and prolonged contact with supervisors and co-workers within his RFC, he failed to connect the evidence to his conclusion.

We conclude, however, that we need not resolve whether the ALJ should have expressly included in his RFC Dr. Sexton's limitation on frequent and prolonged

contact with supervisors and co-workers, because the capacity required to do the jobs identified by the ALJ is not contrary to Dr. Sexton's limitations regarding interaction with supervisors and co-workers; thus, any error was harmless. We may hold an ALJ's error harmless "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). "In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

Here, the VE testified that Lane could perform the job of bottling-line attendant, as defined in the Dictionary of Occupational Titles (DOT), 920.687-042, 1991 WL 687971. The bottling-line attendant job is defined as one in which taking instruction or helping is "[n]ot [s]ignificant" and the activity of talking is "[n]ot [p]resent." *Id.*[1] Thus, the job of bottling attendant does not involve frequent or prolonged interaction with supervisors or co-workers. The VE testified there

---

[1] According to Appendix B of the DOT, the fifth number of the nine-digit code reflects the job's relationship to people. Dictionary of Occupational Titles, App. B—Explanation of Data, People, & Things, 1991 WL 688701. The DOT rates the amount of interaction with people on a scale of 0–8, with 8 representing the lowest possible level of human interaction that exists in the labor force. That ranking describes the need to take instructions as only "[a]ttending to the work assignment instructions or orders of supervisor" with "[n]o immediate response required unless clarification of instructions or orders is needed." *Id.* Even more specifically, the DOT entry for bottling attendant describes the amount of "[t]aking [i]nstructions" required as "[n]ot [s]ignificant." DOT, 920.687-042, 1991 WL 687971. Thus, this job description is consistent with superficial contact with supervisors and co-workers.

were 8,000 such jobs in Colorado and 900,000 such jobs nationally. The relevant test at step five in a disability case is whether there is a significant number of jobs in the regional or national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 n.2 (10th Cir. 2009). Any reasonable trier of fact would be compelled to conclude that 900,000 available jobs is a significant number of jobs for purposes of a step-five determination. *See id*. at 1274 (recognizing that this court has considered 152,000 jobs in the national economy to be legally significant). Because there is no actual conflict between a limitation on frequent and prolonged interaction with supervisors and co-workers and the bottling-line attendant job identified by the VE's testimony, any oversight by the ALJ in including this limitation is harmless error.

The judgment is affirmed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge