FILED
United States Court of Appeals
Tenth Circuit

July 12, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LESIA NELSON,

     Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

     Defendant - Appellee.

No. 15-6226
(D.C. No. 5:14-CV-00982-STE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **McKAY**, and **O'BRIEN**, Circuit Judges.
_____

Lesia Nelson appeals from an order of the magistrate judge affirming the

Commissioner's decision denying her applications for disability insurance benefits

and supplemental security income benefits.[1]  Because the agency applied the correct

legal standards and its factual findings are supported by substantial evidence, we

affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

[1] The parties consented to the jurisdiction of the magistrate judge.

# I. *Background*

Upon the agency's denial of her applications, Ms. Nelson requested a hearing before an administrative law judge (ALJ). Following a de novo hearing, the ALJ issued a decision denying benefits. He determined that Ms. Nelson had several physical and mental impairments that, when considered together, constituted a severe impairment at step two of the five-step sequential evaluation process. *See* Aplt. App., Vol. I at 30.

After consideration of the entire record, the ALJ found that Ms. Nelson retained the residual functional capacity (RFC) to perform medium work,[2] with certain additional limitations:

> the claimant must periodically alternate sitting and standing; . . . the claimant's visual acuity with glasses is 20/60 in the right eye and 20/20 in the left eye; the claimant can carry out simple instructions with routine supervision; can interact appropriately with supervisors and co-workers on a superficial basis; can adapt to a work situation; but cannot interact with the general public.

*Id*. at 39-40.

Based on the testimony of a vocational expert (VE), the ALJ found that although Ms. Nelson could not perform her past relevant work as a certified nurse's aide, there were at least nine medium, light, and sedentary "**unskilled**" jobs totaling more than 1.6 million jobs in the national economy that she could perform. *Id*. at 44 (emphasis

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c). *See also* 20 C.F.R. § 416.967 (same).

in original).  As a result, the ALJ concluded that she was not disabled.  The Appeals Council denied review.  Ms. Nelson now appeals the magistrate judge's order.

## II.  *Standard of Review*

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied.  In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency."  *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (citation and internal quotation marks omitted).  Ms. Nelson argues that the ALJ's RFC finding was not supported by substantial evidence because:  (1) it failed to note the marked limitations noted by a consulting psychologist in a portion of the agency's form used to assess a claimant's mental RFC; (2) it did not express whether her vision impairment was near sighted or far sighted; and (3) it was too vague regarding the need to periodically alternate between sitting and standing.

## III.  *Analysis*

### A.  *Mental RFC Formulation*

Sharon Taber, a psychologist who performed a Mental Residual Functional Capacity Assessment, noted in Section I of the evaluation form that Ms. Nelson had a moderate limitation in her ability to maintain attention and concentration for extended periods, and marked limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the public.  *See* Aplt. App., Vol. II at 374-75.  According to Ms. Nelson, the ALJ's

failure to note the moderate and marked limitations in formulating her mental RFC

was error. We disagree. The purpose of Section I

> is chiefly to have a worksheet to ensure that the psychiatrist or psychologist
> has considered each of these pertinent mental activities and the claimant's
> or beneficiary's degree of limitation . . . . **It is the narrative** written by the
> psychiatrist or psychologist **in section III . . . that adjudicators are to use
> as the assessment of RFC**. Adjudicators must take the RFC assessment **in
> section III** and decide what significance the elements discussed in this RFC
> assessment have in terms of the person's ability to meet the demands of
> past work or other work.

SSA, Program Operations Manual System (POMS), DI 25020.010 B.1 (emphasis

in original) (available at https://secure.ssa.gov/poms.nfs/lnx/0425020010).

In this case, Dr. Taber's Section III narrative adequately captured the limitations

she found in Section I: "Claimant is capable of carrying out simple instructions with

routine supervision. Claimant is capable of interacting appropriately with supervisors

and coworkers on a superficial basis but not with the general public. Claimant can adapt

to a work situation." Aplt. App., Vol. II at 376. In turn, the ALJ incorporated

Dr. Taber's Section III assessment in Ms. Nelson's mental RFC. *See id*., Vol. I at 40.

More to the point, by limiting Ms. Nelson to unskilled work, the ALJ effectively

accounted for *all* the limitations noted in Section I of Dr. Taber's evaluation. Unskilled

work generally requires only the following: (1) "[u]nderstanding, remembering, and

carrying out simple instructions"; (2) "[m]aking judgments that are commensurate with

the functions of unskilled work—i.e., simple work-related decisions"; (3) "[r]esponding

appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing

with changes in a routine work setting." SSR 96-9p, 1996 WL 374185, at *9 (July 2,

4

1996). Even though Dr. Taber noted marked limitations in Ms. Nelson's ability to remember detailed instructions, carry out detailed instructions, and interact appropriately with the public, unskilled work does not require these abilities, nor does it require the ability to maintain attention and concentration for extended periods, an area in which Dr. Taber noted a moderate limitation.

**B.** *Physical RFC Formulation*

Ms. Nelson argues that the RFC determination was too vague because the ALJ did not explain in detail what was meant by the need for her to periodically alternate between sitting and standing. This "limitation" was expressed in a Physical Residual Function Capacity Assessment, when J. Marks-Snelling, D.O., evaluated how long Ms. Nelson could "Sit," and checked a box indicating that she "must periodically alternate sitting and standing to relieve pain or discomfort." Aplt. App., Vol. II at 394. The form further instructed the evaluator to "explain" why the box was checked. *Id*. In an apparent reference to an orthopedic examination that discussed, in part, her low-back pain, *see id*. at 286, Dr. Marks-Snelling explained that Ms. Nelson had arthritis (in her back) that was exacerbated by her obesity, and she thus needed to "periodically alternate sitting and standing." *Id*. at 394.

The ALJ included this "limitation" *verbatim* in his RFC and the hypothetical posed to the VE. But according to Ms. Nelson, this was not enough because the ALJ should have defined what Dr. Marks-Snelling meant by "periodically," even though the doctor did not explain it. In other words, we understand Ms. Nelson's argument to be that the ALJ should have defined "periodically" in terms of minutes or hours.

5

But an ALJ cannot "substitute" his own medical opinion for the opinion of a doctor. *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004). *See also Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) (holding an "ALJ overstep[s] his bounds [when he enters] the province of medicine."). We acknowledge that Ms. Nelson testified that she could only sit for about "15 or 20 minutes" at a time. Aplt. App., Vol. I at 73. The ALJ, however, found her testimony was not credible because "no doctor put[] [any such] limit[] on her." *Id*. at 41.

In this regard, we note that in April 2011, the orthopedic specialist who examined and treated Ms. Nelson for knee and low-back pain wrote that "she . . . has arthritis in [her back], but it's facet arthritis. Really, the disc spaces are satisfactorily preserved. There is no abnormal scoliosis or kyphosis." *Id*., Vol. II at 286. The doctor diagnosed Ms. Nelson with "[e]arly degenerative facet arthritis of the lumbar spine," and advised her to lose weight, stating "[i]t's going to help this body a lot." *Id*. The doctor never mentioned any limitations whatsoever. In sum, there is no evidence in the record to support any limitation beyond the need to "periodically" alternate between sitting and standing. And more to the point, there is no evidence that the need to periodically alternate between sitting and standing prevents Ms. Nelson from performing the jobs identified by the VE.

Next, Ms. Nelson argues that it was not enough for the ALJ to describe her vision, "with glasses," as "20/60 in the right eye and 20/20 in the left eye." *Id*., Vol. I at 40. According to Ms. Nelson, this "does not express visual acuity in sufficient work-related functions to be meaningful within a vocational setting."

6

Aplt. Opening Br. at 10.  For example, "[d]oes that mean bad near acuity or far

acuity?"  *Id*.

We agree with the Commissioner that there is no authority to support

Ms. Nelson's argument that visual acuity must be stated in terms of far and near

acuity.  Once again we note that the "limitation" found by the ALJ is word-for-word

the vision "impairment" described by Ms. Nelson's ophthalmologist.  *See* Aplt. App.,

Vol. II at 497.  And more to the point, there is no evidence that even if Ms. Nelson's

vision impairment had been expressed in bad near or far acuity, it would prevent her

from performing the jobs identified by the VE.

## IV.  *Conclusion*

The judgment of the district court is affirmed.

Entered for the Court


Monroe G. McKay
Circuit Judge

7