**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 18, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KRISTIN SHELTON,

     Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commission of the Social Security
Administration,

     Defendant - Appellee.

No. 15-6220
(D.C. No. 5:14-CV-00575-M)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**\*
_____

Before **HOLMES**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

    Kristin Shelton appeals the district court's judgment affirming the

Commissioner's denial of her application for disability insurance benefits and

supplemental security income. Exercising jurisdiction under 42 U.S.C. § 405(g) and

28 U.S.C. § 1291, we affirm.

---

    \* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

Shelton applied for benefits in 2009 alleging she became unable to work in 2008 at age 37 due to bipolar disorder.[1]  After a hearing at which she was represented by counsel, the Administrative Law Judge (ALJ) denied her claims.  At step two of the five-step evaluation process used to assess social security claims, *see Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007), the ALJ found Shelton had severe impairments of mood disorder and post-traumatic stress disorder (PTSD).  The ALJ applied the special technique for evaluating the severity of mental impairments by rating Shelton's impairment in four functional areas.  *See* 20 C.F.R. §§ 404.1520a, 416.920a (describing special technique).  The ALJ determined Shelton had no more than mild limitations in activities of daily living; moderate difficulties in the areas of social functioning and of concentration, persistence, and pace; and one to two episodes of decompensation.

Based on those determinations and the other record evidence, the ALJ found that Shelton retained the residual functional capacity (RFC) to perform work at all exertional levels with the following non-exertional limitations:  "[s]he must work [1] in relative isolation with limited contact with the general public and coworkers; [2] she can work around others but not in a cooperative teamwork context; and [3] she can perform one to two step tasks."  Aplt. App., Vol. I at 41.

---

[1] We will not recite all of the medical evidence here.  The parties are familiar with the evidence and the relevant medical evidence is described accurately and thoroughly in the magistrate judge's 33-page report and recommendation.

Given this RFC, the ALJ determined at step four that Shelton couldn't perform any of her past relevant work.  At step five, considering her RFC, age, education, work experience, and the testimony of a vocational expert (VE), the ALJ found that Shelton could perform jobs existing in significant numbers in the national economy. Therefore, the ALJ concluded Shelton wasn't disabled.  The Appeals Council denied review, and the district court, adopting the report and recommendation (R&R) of the magistrate judge, affirmed the denial of benefits.

## DISCUSSION

On appeal, Shelton argues the RFC isn't supported by substantial evidence because it doesn't account for her anxiety and social limitations.  She also argues the ALJ erred in assessing her credibility and the weight of some medical opinions.  We review the Commissioner's decision to determine whether substantial evidence supports the agency's factual findings and whether the agency applied the correct legal standards.  *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).  But in doing so, we neither reweigh the evidence nor substitute our judgment for the agency's. *Id*.

Determination of Severe Impairments.  Shelton argues the ALJ erred in not finding her anxiety disorder to be a severe impairment at step two.  The argument fails both as a matter of law and on the evidence.  "[T]he mere presence of a condition is not sufficient to make a step-two showing."  *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003).  A "mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work."  *Id*. (internal quotation marks and emphasis

3

omitted).  As a matter of law, an ALJ need find only one severe impairment; "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).  Here, the ALJ found Shelton suffered from two severe impairments:  mood disorder and PTSD.

Moreover, despite Shelton's assertion that she has anxiety or panic attacks, she fails to cite any medical evidence in the record to support her claim.  And our review of the record confirms the R&R's conclusion that the record contains neither a diagnosis of anxiety disorder nor evidence that Shelton suffered from anxiety attacks or the symptoms associated with such attacks.  State agency psychologists Drs. Hartley and Gerrity didn't find her to have any anxiety-related disorders; nor did consultative psychologist Dr. Repanshek.  Her treating physician, Dr. Gutierrez, opined that she had PTSD, an anxiety-related disorder, but described her as having only a slightly anxious or depressed mood or affect.  Shelton asserts her anxiety causes extreme limitations in her concentration and attention but no medical evidence supports her assertion.  She also claims that her anxiety causes her headaches, a work-related limitation, but again, no evidence in the medical record links her headaches to any anxiety attacks or anxiety disorder.  Accordingly, we find no error in the ALJ's omission of anxiety disorder at step two.

Further, to the extent that Shelton argues the ALJ's RFC determination didn't adequately account for her general complaints of feeling anxious, she doesn't identify any anxiety-related symptoms.  And the ALJ included in his RFC determination the

4

only potentially relevant anxiety-related symptom identified in the record—Shelton's inability to work around people. In addition, the limitation to one-to-two-step tasks accommodates Shelton's allegations of feeling anxious. We conclude that in making the RFC determination, the ALJ recognized his obligation to consider all impairments. *See Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (stating ALJ must consider limiting effects of all impairments, even those found not disabling at step two).

RFC Limitations. The ALJ found that Shelton had moderate difficulties with social functioning, and in his RFC assessment, limited her to working "in relative isolation with limited contact with the general public and coworkers" and to "work[ing] around others but not in a cooperative teamwork context." Aplt. App., Vol. I at 41. Shelton contends the finding she could have limited contact with the public is not supported by the record, arguing the ALJ ignored evidence from Dr. Hartley, a state agency psychologist, who stated she "cannot relate to the general public." *Id.*, Vol. II at 386. She asserts the ALJ's RFC should have limited her to no contact with the public. We disagree.

First, as noted in the R&R, Shelton's focus on the "limited contact" RFC limitation ignores the other limitations in the RFC that she work in relative isolation and not in a teamwork context. Second, she ignores the remainder of Dr. Hartley's opinion, which also found that she "can adapt to a work situation" and isn't significantly limited either in her ability to get along with co-workers without exhibiting behavioral extremes or her ability to respond appropriately to supervisors.

5

*Id.* at 385-86. Moreover, Shelton's activities of daily living included spending time with her father and stepmother, shopping, going to dinner, and talking to friends on the phone. Dr. Hartley's statement that she can't relate to the general public doesn't overwhelm the substantial evidence in the record that the ALJ identified and relied upon to conclude Shelton could work in relative isolation in a non-teamwork context with limited public contact.

Without supporting authority,[2] Shelton characterizes the "relative isolation" limitation as insufficiently specific for purposes of the ALJ's hypothetical question to the VE. But the ALJ properly translated the medical evidence regarding Shelton's limited ability to interact with the general public into a clear restriction that she work in relative isolation, with the further explanation that she have limited contact with the general public. We are satisfied that both the ALJ's RFC assessment and his hypothetical question to the VE "relate[d] with precision all of [Shelton's] impairments." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted).

---

[2] Shelton asserts, without citation, that an ALJ can't use "nonspecific qualifying terms" because they don't convey the extent of a claimant's maximum capabilities. But this language derives from the Social Security Administration's Program Operations Manual (POMS), which states that *medical consultants* should not, in preparing a section III narrative of a mental RFC assessment, include any "nonspecific qualifying terms (e.g., moderate, moderately severe) to describe limitations" because "[s]uch terms do not describe function and do not usefully convey the extent of [a] capacity limitation." POMS DI 24510.065.B.1.c., http://policy.ssa.gov/poms.nsf/lnx/0424510065 (emphasis omitted) (visited 9/30/2016).

Shelton argues the evidence that she's been terminated from many jobs demonstrates that she can't work with the public, but as the ALJ noted, many of her jobs required that Sheldon work with people on a continuous basis, unlike the jobs identified by the VE. All of the jobs identified by the VE require interaction with people only in the context of taking instruction and involve insignificant or no interaction with the general public. Given the lack of any actual conflict between the limitation Sheldon seeks of no interaction with the general public, and the requirements of the jobs identified by the VE's testimony, any error by the ALJ is harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (finding harmless error when we can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").[3]

The ALJ also found that Shelton had moderate difficulties with concentration, persistence, and pace. Shelton argues the ALJ's RFC determination that she can perform "one to two step tasks" fails to incorporate these limitations. But a finding of moderate difficulties in concentration, persistence, or pace doesn't, by itself require the ALJ to assess Shelton's RFC as more restricted than would permit her to perform one or two step tasks. In *Vigil*, we held that an RFC limiting the claimant to

---

[3] For the first time on appeal, Shelton argues the phrase "relative isolation" should be interpreted to require that she work in complete physical isolation from others—a limitation she asserts is inconsistent with the jobs identified by the VE. But Shelton forfeited this issue by failing to raise it below. *See Allman*, 813 F.3d at 1330.

7

unskilled work adequately addressed the claimant's moderate problems with concentration, persistence, and pace. 805 F.3d at 1204; *see also Smith v. Colvin*, 821 F.3d 1264, 1268-69, 1268 n.1 (10th Cir. 2016) (rejecting similar argument and noting that psychologist's notations of moderate limitations serve only as an aid to the ALJ's RFC assessment). Shelton doesn't explain why, consistent with *Vigil*, the ALJ's RFC's limitations don't adequately address her moderate problems with concentration, persistence, and pace.

Consideration of Medical Opinion. Shelton argues that the ALJ failed to properly analyze the medical opinions of treating physician Dr. Gutierrez in reaching his RFC determination. The ALJ gave some weight to Dr. Gutierrez's statements concerning Shelton's symptomology and no weight to his opinion that she is unable to engage in work. Shelton says the ALJ failed to cite the specific evidence from Dr. Gutierrez he gave some weight to. We disagree.

"[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion [and] [t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Allman*, 813 F.3d at 1332 (ellipses, citation and internal quotation marks omitted). As thoroughly discussed in the R&R, the ALJ detailed the evidence provided by Dr. Gutierrez and provided clear reasons for assigning some weight to the symptomology evidence. Further, the ALJ sufficiently linked his findings to the evidence to enable our review, and substantial

8

evidence supports those findings. We find no error in the ALJ's assessment of the medical-source evidence.[4]

Credibility. Shelton asserts the ALJ improperly analyzed her credibility. We disagree. Credibility determinations are the province of the factfinder, and we will not upset them if they are supported by substantial evidence. *Wilson*, 602 F.3d at 1144. Findings "should be closely and affirmatively linked to substantial evidence." *Id*. (internal quotation marks omitted).

The ALJ found Shelton's testimony about the severity of her symptoms only partially credible, listing ten specific reasons, linked to the evidence, for discounting her allegations. In particular, the ALJ relied upon the inconsistency between Shelton's allegations and the medical record. *See* SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996) ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.") (superseded by SSR 16-3p, 2016 WL 1119029 (effective Mar. 28, 2016)). As to Shelton's mental impairments, the ALJ noted there were no findings of disordered mentation, abnormalities of thought, or evidence of side effects from medication; noted the evidence that Shelton had no more than moderate psychological limitations and her primary mental limitation was an inability to get along with others; and noted the evidence that Shelton had an intact ability to engage

---

[4] Shelton also briefly questions the ALJ's assessment of counselor Rodgers' evidence (a one-paragraph letter), but as she properly concedes, Rodgers didn't qualify as an acceptable medical source. Thus his evidence wasn't entitled to any weight.

in abstract reasoning and average intellectual functioning, and an ability to carry out activities of daily living.

Shelton doesn't challenge any of the ALJ's findings as to the inconsistencies between her allegations and the medical evidence. Rather, she argues the reasons given by the ALJ don't relate to concepts such as candor, honesty, integrity, or truthfulness, and thus his reasons were improper. But contrary to Shelton's assertion, the ALJ's findings as to the credibility of the claimant's statements *can't* be based on "intangible or intuitive notion[s]" of the claimant's credibility. SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Instead, the reasons for the credibility finding "must be grounded in the evidence and articulated in the determination or decision." *Id.*[5]

Shelton also asserts the ALJ improperly relied on activities of daily living (ADL) in assessing her credibility. However, the ALJ didn't rely on her ADLs as the sole basis for finding Shelton not fully credible. Instead, the ALJ properly identified this evidence as one of ten reasons supporting his adverse credibility finding. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (stating that an ALJ may consider ADLs as part of credibility evaluation); *Wilson*, 602 F.3d at 1146 (considering ALJ's reliance on ADLs as permissible part of substantial evidence supporting credibility evaluation). We conclude the ALJ properly considered the relevant factors and

_____

[5] Indeed, SSR 96-7p has been rescinded and replaced with SSR 16-3p, effective March 28, 2016 (after the ALJ's decision here), in order to "clarify that subjective symptom evaluation is not an examination of an individual's character," and to "eliminat[e] the use of the term 'credibility.'" 2016 WL 1119029, at *10 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness. . . .").

10

specifically set forth record evidence relied upon in making his credibility determination. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Substantial evidence supports the ALJ's decision and we discern no legal error. Therefore, we affirm the district court's judgment.

Entered for the Court


Nancy L. Moritz
Circuit Judge