**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 29, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CARLA LEE CARR,

Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

Defendant - Appellee.

No. 17-7077
(D.C. No. 6:16-CV-00129-JHP-KEW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

Carla Lee Carr appeals a district court order affirming the Commissioner's denial of disability and supplemental security income benefits. Ms. Carr claims an administrative law judge (ALJ) incorrectly evaluated the opinion of her mental health case manager and posed inaccurate hypothetical questions to a vocational expert (VE). Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm in part, reverse in part, and remand for further proceedings.

I

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ms. Carr alleged she was disabled by complications from brain surgery, neck and back pain, drowsiness, vision problems, incontinence, and depression. At a hearing before an ALJ, she testified that she had previously worked as a money counter at a casino and began experiencing vision loss caused by a brain tumor. In 2006, she underwent surgery to remove the tumor and afterwards received radiation treatment. Later, she underwent a two-level spinal fusion and recovered enough to return to work, but eventually she was forced to leave her job due to pain. By then, she had fallen into a depression, and in 2012, she attempted suicide. She was hospitalized and upon discharge received outpatient mental health treatment at Green Country Behavioral Health Services (GCBHS). Her primary clinician at GCBHS was Geraldine Lee, a certified case manager and rehabilitation specialist.

The ALJ also heard testimony from a VE. The ALJ asked the VE whether someone with Ms. Carr's limitations could return to her previous work, given that she was diagnosed with organic mental disorder but could "understand, remember, and carry out simple tasks under routine supervision." Aplt. App., Vol. II at 62. The VE replied that she could not because her impairments limited her to unskilled work. The ALJ then asked whether there were unskilled jobs someone with such limitations could perform, to which the VE replied that Ms. Carr could work as an inspector, an assembler, and a masker. The ALJ added, however, that Ms. Carr could not perform these jobs if her limitations were verified because "[s]he had lots of trouble with concentration and remembering things." *Id.* at 65.

Based on this and other evidence, the ALJ concluded that Ms. Carr was not disabled at the fifth step of the disability-evaluation process. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the process). The ALJ reasoned that Ms. Carr retained the residual functional capacity (RFC) to perform light work subject to certain non-exertional limitations:

> Although [Ms. Carr's] short-term memory and pace are slowed, she retains the ability to understand, remember and carry out simple and some more complex tasks under routine supervision. [She] can relate to others on a superficial work basis and to a lesser degree with the general public. [She] can adapt to a work situation.

Aplt. App., Vol. II at 14. Given these findings and the VE's testimony that she could transition to unskilled work, the ALJ concluded that Ms. Carr was not entitled to benefits. The appeals council denied review, and the district court affirmed.[1]

## II

"We review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). "In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner." *Id.*

On appeal, Ms. Carr contends the ALJ incorrectly evaluated a report prepared by Ms. Lee and improperly omitted her memory and pace deficits from his hypothetical questions to the VE. We see no reversible error in the ALJ's analysis of

---

[1] A federal magistrate judge recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings, but on de novo review, the district court rejected the magistrate judge's report and recommendation.

3

Ms. Lee's report, but we agree the ALJ failed to accurately describe Ms. Carr's mental limitations in his hypothetical questions.

*A. Clinician's Report*

We first consider Ms. Lee's report. In June 2014, Ms. Lee wrote a one-page letter indicating that she was Ms. Carr's primary clinician at GCBHS. She indicated that Ms. Carr had been diagnosed with major depression and post-traumatic stress disorder. She further stated that Ms. Carr experienced "moderate to severe depressive symptoms on a daily basis," which made it difficult for her to function most days. Aplt. App., Vol. IV at 667. Additionally, she indicated that Ms. Carr had "no motivation for 90% of the time and ha[d] several days of the week where she [wa]s not able to get out of bed." *Id.* According to Ms. Lee, Ms. Carr felt "helpless most days[,] especially since she ha[d] little independence." *Id.* She also felt unworthy of her family's support and was "angry because she [wa]s not able to work and provide for herself." *Id.* Ms. Lee added that Ms. Carr had a loss of appetite, insomnia, "problems with being able to remember things[,] and . . . trouble being able to focus and concentrate on things." *Id.*

The ALJ summarized the report but did not weigh Ms. Lee's statements or describe what impact, if any, they had on his decision. Ms. Carr contends that the ALJ's failure to expressly weigh and analyze Ms. Lee's report constitutes reversible error, but we disagree.

It is well-established that an ALJ must consider all the medical source evidence and discuss the weight he gives to each opinion. 20 C.F.R. §§ 404.1527(c),

4

416.927(c); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). But the regulations distinguish between "acceptable medical sources," medical sources who are not "acceptable medical sources," and "other sources." Social Security Ruling (SSR) 06-03p, 2006 WL 2329939, at *1-2 (Aug. 9, 2006). "Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, only they can provide medical opinions, and only they can be considered treating sources." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citations and internal quotation marks omitted). An ALJ should still explain the weight given to opinions from other sources. *Keyes-Zachary*, 695 F.3d at 1163. And "the factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. § 404.1527[(c)] and § 416.927[(c)] apply equally to 'all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other [non-medical] sources.'" *Frantz*, 509 F.3d at 1302 (quoting SSR 06-03p, 2006 WL 2329939, at *4). But an ALJ's evaluation of an opinion from an other non-medical source "is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Keyes-Zachary*, 695 F.3d at 1164 (quoting SSR 06-03p, 2006 WL 2329939, at *6).

Here, Ms. Lee identified herself as a certified case manager and rehabilitation specialist. Consequently, her opinion was that of an "other non-medical source," *see* SSR 06-03p, 2006 WL 2329939, at *2 (designating rehabilitation counselors as other "non-medical sources"), and the ALJ's analysis was sufficient so long as we can follow his reasoning. On this score, we can see that the ALJ accommodated Ms. Lee's opinion that Ms. Carr had memory and concentration problems because the

5

RFC recognized she had difficulty with memory and pace. "There is no reason to believe that a further analysis or weighing of this opinion could advance [Ms. Carr's] claim of disability." *Keyes-Zachary*, 695 F.3d at 1163; *see also Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) ("[T]he need for express analysis is weakened when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC." (brackets and internal quotation marks omitted)).

Ms. Lee's report also contained several statements relaying how Ms. Carr felt angry and helpless about her situation. But these statements were not "*opinions* concerning her 'symptoms, diagnosis and prognosis, what she can still do despite the impairment(s), or her physical and mental restrictions.'" *Keyes-Zachary*, 695 F.3d at 1164 (quoting SSR 06-03p, 2006 WL 2329939, at *5 (brackets omitted)). Thus, the ALJ was not obligated to weigh these statements.

As for Ms. Lee's statements that Ms. Carr lacked motivation 90% of the time and could not get out of bed several days a week, these were arguably opinions about Ms. Carr's symptoms, but it is clear the ALJ gave these statements little or no weight because the RFC does not reflect them. Ms. Carr suggests the ALJ could not simply reject Ms. Lee's statements because she was a treating source, but she was not an "acceptable medical source" and therefore cannot qualify as a treating source. *See Frantz*, 509 F.3d at 1301; *see also* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Treating source means your own acceptable medical source . . . ."). Ms. Carr correctly points out that an opinion from a non-medical source "may, under certain circumstances, properly be determined to outweigh the opinion from a medical

6

source," SSR 06-03p, 2006 WL 2329939, at *6, but there was evidence from several acceptable medical sources who did not assess similarly debilitating symptoms. Indeed, Dr. William Cooper, an examining physician, concluded that Ms. Carr had severe depression but her "[t]hought processes appear[ed] normal." Aplt. App., Vol. III at 362. Larry Vaught, Ph.D., a psychologist, performed a mental status exam and found that she "describe[d] some fairly serious depression" with memory problems and slowed concentration, persistence, and pace, although he did not assess any other specific limitations. *Id.* at 369. An agency psychologist evaluated the evidence and assessed Ms. Carr's mental RFC to be virtually identical to that formulated by the ALJ. And a second agency psychologist concurred with that assessment, noting that Ms. Carr's prior mental status exam was normal and she "appear[ed] capable of semi-skilled work" despite "some mental limitations." *Id.*, Vol. II at 91. It is not our role to reweigh this evidence, and the ALJ was entitled to rely on it to discount Ms. Lee's more restrictive statements.

 *B. Hypothetical Questions*

 Ms. Carr also contends the ALJ failed to account for her memory and pace deficits in his hypothetical questions. The ALJ found she had moderate difficulties with concentration, persistence, or pace, noting her "problems with concentration and memory after her brain surgery." *Id.* at 13. The ALJ included these deficits in his RFC assessment but excluded them from his dispositive hypothetical question to the VE, stating only that she had the "ability to understand, remember, and carry out simple tasks under routine supervision," *id.* at 62. The Commissioner acknowledges

7

the omission but asserts that Ms. Carr's memory and pace deficits were adequately captured in the ALJ's restriction to simple tasks, which the Commissioner equates with unskilled work. *See* 20 C.F.R. §§ 404.1568(a), 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties . . . ."). The Commissioner says that "such moderate mental limitations may be accounted for with an RFC restricting a claimant to unskilled work." Aplee. Br. at 19 (citing *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015)).

We agree that an ALJ may find and explain how restricting a claimant to unskilled work accounts for their moderate mental limitations when formulating a claimant's RFC. *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016); *Vigil*, 805 F.3d at 1203-04. But for purposes of articulating an accurate hypothetical question to a VE, we have held that an ALJ's restriction to simple or unskilled work generally does not capture the claimant's functionally distinct mental limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012). This is because "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4 (1985). These abilities are work-related mental activities, *see id.*; SSR 96-8p, 1996 WL 374184, at *6 (1996), and when a claimant's moderate mental limitations impair these basic abilities, a restriction to "unskilled" work may not accurately describe the claimant's true mental functioning. Thus, an ALJ must

8

express a claimant's non-exertional limitations "in terms of work-related functions." SSR 96-8p, 1996 WL 374184, at *6.

Here, the hypothetical indicated that Ms. Carr could "understand, remember, and carry out simple tasks." Aplt. App., Vol. II at 62. Assuming simple tasks denotes unskilled work, the hypothetical contains no reference to Ms. Carr's memory and pace deficits, which were based on the ALJ's finding that she had moderate difficulties with concentration, persistence, or pace. Instead, the hypothetical seemingly contradicted the ALJ's findings by stating that "she could remain attentive and responsive in a work setting and carry out work assignments satisfactorily." *Id.* at 63. Further, the ALJ failed to inquire or explain how Ms. Carr could perform the jobs identified by the VE with her moderate mental limitations. Under these circumstances, the hypothetical failed to describe with precision all of Ms. Carr's mental limitations. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." (brackets and internal quotation marks omitted)).

The Commissioner contends it is "obvious" that "the language used in the RFC finding clearly shows that . . . the difficulties with pace and memory were adequately captured by the limitation to primarily simple tasks." Aplee. Br. at 18. That classification might suffice for purposes of assessing a claimant's RFC, which as the Commissioner points out represents "'*the most* [a claimant] can still do despite [his or her] limitations.'" *Id.* (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)).

9

But restricting a claimant to unskilled work does not explain the extent to which a claimant's mental limitations erode the unskilled occupational base. Although "a nonexertional impairment can have a negligible effect on the range of jobs available, [t]he ALJ . . . must back such a finding of negligible effect with the evidence to substantiate it." *Talbot v. Heckler*, 814 F.2d 1456, 1465 (10th Cir. 1987) (citations omitted). In *Vigil*, we were satisfied with the ALJ's RFC analysis because the ALJ identified and explained the specific evidence demonstrating that the claimant "retained enough memory and concentration to perform at least simple tasks." 805 F.3d at 1203-04. We cautioned, however, that "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." *Id.* at 1204 (citing *Chapo*, 682 F.3d at 1290 n.3).

Unlike *Vigil*, the ALJ did not explain how Ms. Carr can satisfy the demands of unskilled work with her mental limitations. Although the ALJ cited evidence that Ms. Carr could "perform at the light exertional level with the non-exertional limitations," Aplt. App., Vol. II at 19, this tells us nothing about whether she can meet the demands of unskilled work with her limitations. Moreover, the omission was not harmless. The VE testified that if Ms. Carr's limitations were verified, she would be unable to perform any of the identified jobs because "[s]he had lots of trouble with concentration and remembering things." *Id.* at 65. Yet the ALJ found that she had memory and pace deficits, and he incorporated them into the RFC assessment. His failure to include them in the dispositive hypothetical question prevents the VE's testimony from constituting substantial evidence upon which the

10

ALJ could predicate his step-five conclusion that Ms. Carr could transition to other work. Accordingly, we remand this case to the Commissioner for a proper step-five evaluation of Ms. Carr's non-exertional limitations.

III

The judgment of the district court is affirmed in part and reversed in part, and this case is remanded to the district court with instructions to remand to the Commissioner for further proceedings consistent with this Order and Judgment.

Entered for the Court


Mary Beck Briscoe
Circuit Judge