**Rene Jesus GARCIA, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

**Civil Action No. 15–cv–01527–JLK**

United States District Court, D. Colorado.

Signed November 23, 2016

Chris R. Noel, Law Office of Chris R. Noel, Boulder, CO, for Plaintiff.

David I. Blower, Social Security Administration, Office of the General Counsel, Region VIII, J. Benedict Garcia, U.S. Attorney's Office, Denver, CO, for Defendant.

## CORRECTED ORDER

### KANE, SENIOR U.S. DISTRICT JUDGE

Plaintiff Rene Jesus Garcia suffers from depression, anxiety, post-traumatic stress disorder, a pain disorder, and low back, left ankle, and knee pain. He experienced two traumatic work injuries as an oilfield worker but has been attending college to begin anew. Garcia filed his applications for Social Security Income (SSI) and Disability Insurance Benefits (DIB) in April 2010 and now appeals for the second time the decision of the Acting Commissioner of Social Security (Commissioner) denying his applications. Garcia previously appealed Administrative Law Judge (ALJ) Lowell Fortune's first decision denying him benefits, and my colleague Judge R. Brooke Jackson reversed and remanded the case, directing the ALJ to (1) make further findings pertaining to the effect of Garcia's mental impairments on his residual functional capacity and (2) reweigh the opinion evidence of Garcia's treating physiatrist in compliance with the two-step analysis explained in *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).[1]

This time on appeal, Garcia argues that, with his second decision, the ALJ (1) again erred in weighing his treating physicians' opinions, (2) wrongly equated his mental limitations to a certain specific vocational preparation level, (3) improperly assessed his credibility, (4) failed to consider a listing for his back and pain impairments, (5) did not have substantial evidence to support his residual functional capacity findings, and (6) proposed a legally erroneous hypothetical to the vocational expert. Because the ALJ repeatedly failed to apply the proper legal standards and his findings are not supported by substantial evidence, I REVERSE and REMAND for an immediate award of benefits.

### I. Legal Standard

The exclusive questions for review on a Social Security appeal are

---

1. After the Commissioner's initial denial of Garcia's applications for SSI and DIB, the ALJ held a hearing at Garcia's request in November 2011. The ALJ found that he was not disabled, and Garcia sought review of the decision by the Social Security Appeals Council, which declined his request. Garcia then appealed the decision to this Court, and Judge Jackson reversed and remanded the case. On remand, the ALJ held a second hearing in March 2015, and again found that Garcia was not disabled. After sixty days, the ALJ's second decision became the final decision of the Commissioner. Garcia then filed his Petition in this case in July 2015. After the appeal was fully briefed, the case was assigned to another judge with this Court, and due to the press of court business, the case was reassigned to me in mid-August of this year. Garcia immediately filed an Unopposed Motion for Leave to File Supplemental Authority, which I granted. Once the parties had briefed that issue, I held oral argument on October 25, 2016. All administrative prerequisites for appeal have been satisfied, and jurisdiction is proper under 42 U.S.C. § 405(g).

whether there is substantial evidence supporting the final decision of the Commissioner and whether the correct legal standards were applied by the ALJ. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir.1992). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014) (internal quotation omitted). In reviewing the decision of the Commissioner, I cannot substitute my judgment for that of the ALJ or reweigh the evidence. *Id.* (citation omitted).

To qualify for SSI under 42 U.S.C. § 1382(a)(1), a claimant must be aged, blind, or disabled and must be eligible based on his income and resources. To qualify for DIB under 42 U.S.C. § 423(a), a claimant must, among other requirements, be found to be under a disability while insured for disability benefits. A claimant can only be found to be disabled "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 1382c(a)(3)(B), 423(d)(2)(A). A claimant's disability must have lasted or be expected to last for at least 12 months. *Id.* §§ 1382c(a)(3)(A); 423(d)(1)(a). In determining whether a claimant is disabled, the ALJ must follow the five-step sequential protocol set forth in §§ 404.1520(a)(4) and 416.920(a)(4) of Title 20 of the Code of Federal Regulations.[2]

## II. Background

In October 2003, Garcia fell approximately 20 feet off of an oilrig while he was working. The accident shattered his left ankle and aggravated a significant back injury he had sustained in 1998. Garcia's 2010 applications for SSI and DIB claim an onset date back to the October 2003 injury.

---

**2.** At step one of the sequential protocol, the ALJ must determine that the claimant is not engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(4)(i), 416.920(a)(4)(i). If the claimant is not, then the ALJ must determine at step two that the claimant has a medically determinable impairment that is severe. *Id.* §§ 404.1520(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment meets or is equivalent to one of the listed impairments in Appendix 1 of Title 20 of the Code of Federal Regulations, Part 404, Subpart P. If the claimant's impairment meets or equals in severity one of these listed impairments, the analysis ends and the ALJ will find the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Otherwise, the analysis continues to step four, where the ALJ must determine the claimant's residual functional capacity (RFC). *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Based on the claimant's RFC, the ALJ must conclude that the claimant cannot perform any of his past relevant work (PRW) or the claimant will be found to be not disabled. *Id.* Lastly, at step five, the Commissioner is responsible for providing evidence that other work exists in significant numbers in the economy and that the claimant can perform such work given his RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g). If the Commissioner carries her burden, the claimant is not disabled, but if the claimant is found unable to do other work available in the economy, she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the ALJ finds at any step that the claimant is not disabled, the process need go no further. *Id.* §§ 404.1520(4), 416.920(a)(4).

*Medical Evidence*

Shortly after Garcia's accident on the oilrig, Dr. Craig Miller performed surgery on his ankle to repair the fracture and insert hardware. R. 341–43. Dr. Miller referred Garcia to physiatrist Dr. Jeffrey Kesten after Garcia continued to experience significant pain post-surgery in order to "rule out a regional pain type syndrome." R. at 566. In 2004, Dr. Kesten tentatively diagnosed Garcia with Reflex Sympathetic Dystrophy Syndrome (RSDS),[3] "a chronic pain syndrome most often resulting from trauma to a single extremity." SSR 03–2p, 2003 WL 22399117, at *1. Dr. Kesten then referred Garcia to Dr. John Mark Disorbio for "pain psychology." R. at 650. Dr. Disorbio treated Garcia from July to December 2004 and diagnosed him with a pain disorder and an adjustment disorder with anxiety and depressive symptoms. R. at 649–60.

In January 2005, Dr. Kesten placed Garcia at maximum medical improvement (MMI)[4] due to Garcia's non-compliance with his recommended treatment plan. R. at 572, 700. Garcia was incarcerated multiple times from early 2005 to 2008 after violating his probation on two occasions and then violating his parole. R. at 55–59. Unsurprisingly, there are few treatment records during this period. In May 2007, Garcia returned to Dr. Kesten in order to continue treatment for his impairments and to reopen his workers' compensation case. R. at 60.

Dr. Kesten treated Garcia for over two more years before again placing him at maximum medical improvement. In May 2009, Garcia was referred for a functional capacity evaluation with occupational therapist Vicki Mallon. She opined that Garcia's "overall demonstrated abilities [were] most consistent with the sedentary to light work category at [that] time." R. at 385. The following month, Dr. Kesten concluded Garcia had reached MMI and should be limited to no continuous sitting greater than one hour and standing or walking greater than 30 minutes. R. at 683. He asserts that, in releasing Garcia to work with restrictions, he intended to protect him from further injury, "while not unnecessarily restricting his ability to economically sustain himself in any sense." R. at 828–29.

In March 2010, Garcia underwent an MRI of his lumbar spine that showed interval changes, including increased L4–5 disk bulging resulting in mild central canal narrowing and "moderate-severe bilateral neural foraminal narrowing abutting the bilateral exiting L4 nerve roots." R. at 462. Due to these changes, Dr. Kesten determined Garcia was no longer at MMI and referred him to Dr. Andrew Castro. R. at 507. Dr. Castro noted Garcia had "severe degenerative changes at the L4–L5 level" and recommended a one-level lumbar fusion after exhausting all conservative options. R. at 459–60. Garcia declined the surgery, and Dr. Kesten again placed him at MMI. R. at 529. Dr. Kesten later opined that his previous restriction that Garcia not sit for more than one hour at a time would require that he be away from his workstation every hour for five to ten minutes. R. at 646–47. He also stated that it "is quite likely Mr. Garcia would miss 4 or more days a month from work due to his physical impairments, psychological im-

---

**3.** RSDS is also known as Complex Regional Pain Syndrome (CRPS).

**4.** MMI is the point at which a claimant's impairment "has become stable and when no further treatment is reasonably expected to improve the condition." Colo. Rev. Stat. § 8–40–201(11.5).

pairments, sleep disturbance, and adverse events secondary to his pharmacologic regimen." R. at 647. Dr. Kesten concluded that Garcia "should have been deemed unable to sustain full-time employment at any job from October 2003" through the time of his report, even after he was released to work with restrictions. *Id.*

As part of his workers' compensation case, Garcia underwent a psychological and vocational evaluation with Dr. David Zierk in April and May 2010. R. at 615–33. Dr. Zierk diagnosed Garcia with moderate depression and mild anxiety symptoms along with attention-deficit/hyperactivity disorder. R. at 626. He reported that Garcia "experience[d] increased problems with attention, concentration, coping and stress management, motivation, and organizational skills due to the effects of negative cognitions, depressed mood, and chronic pain factors." R. at 626. Dr. Zierk concluded Garcia was permanently and totally disabled and "incapable of becoming employed and earning wages in his local labor market." R. at 633. Kristine Harris and Patrick Renfro also performed a vocational evaluation on Garcia but determined that, with the restrictions provided by Dr. Kesten, he could still perform a number of jobs at least on a *part-time* basis. R. at 644.

For his Social Security applications, Garcia underwent a consultative examination with Dr. Joseph Sever in August 2010. R. at 542–45. Dr. Sever opined that Garcia should avoid continuous sitting for greater than one hour and continuous standing and walking greater than thirty minutes. R. at 545. That same month, State Agency medical consultant Dr. Kasiel Steinhardt provided his opinion on Garcia's RFC after purportedly reviewing Garcia's medical records. R. 102–04. Acknowledging that there were contrary opinions in the record, he determined that Garcia could stand and/or walk three hours and sit six hours of an eight-hour day and could utilize normal breaks and postural shifts to relieve pain or discomfort. R. at 103.

In early 2012, Dr. Bharat Desai removed the hardware from Garcia's left ankle due to his mild to moderate daily pain. R. at 1224, 1227–28. Garcia then began seeing Dr. Giancarlo Barolat to consider neurostimulation therapy for the severe pain in his left leg. R. at 1177. Dr. Barolat treated Garcia for multiple years and opined that "there is no reason to believe that he is able to work," since he has had significant, unchanging, chronic pain over the last ten years. R. at 1170. In 2014, Garcia began receiving treatment for both his mental and physical impairments at Aurora South Clinic. R. 1180–1206, 1230–1274. The reports of the providers at the Clinic indicate that Garcia was making progress but continued to struggle with chronic pain and post-traumatic stress disorder symptoms. R. at 1196.

*The Second Hearing and Decision*

In March 2015, Garcia was living with his mother and sister and attending Arapahoe Community College where he had a grade point average of 3.7. R. at 883–84, 907. He struggled to sit through an hour-and-15–minute class and, because of his pain, would have to stand up two to three times for five minutes at a time during each class. R. at 893–94. Due to his impairments, Arapahoe Community College granted him the accommodations of extended test taking time, additional excused absences, and breaks as needed. R. at 1125.

Garcia's continued complaints did not persuade the ALJ to find him disabled. In his second decision, the ALJ determined Garcia's only severe impairments to be left ankle and lower leg disorder, lumbar spine disorder, and pain disorder. He did not find Garcia's knee condition or mental im-

pairments; namely an adjustment disorder, a depressive disorder, and an anxiety disorder; to be severe. He evaluated the mental impairments using the "paragraph B" criteria and determined that they did not restrict Garcia's activities of daily living, did not bring about episodes of decompensation, and only mildly caused difficulties in maintaining social functioning and concentration, persistence, or pace. R. at 837; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.07. Although medical sources opined on the possible listings Garcia met, *e.g.* R. at 647, the ALJ did not consider any listing for his physical impairments or his RSDS.

For his residual functional capacity (RFC), the ALJ limited Garcia to light work with a specific vocational preparation (SVP) of 5 or less, meaning he is capable of skilled work with "moderately detailed or complex duties." R. at 8382004 WL 1898704, at *3. According to the ALJ, Garcia can only lift 20 pounds occasionally and 10 pounds frequently. He should only stand and/or walk two hours and sit six hours of an eight-hour day and should avoid all exposure to unprotected heights. He is also unable to push; pull; balance; kneel; crawl; operate foot controls with his left foot; or climb ladders, scaffolds, ropes, ramps or stairs. In determining Garcia's RFC, the ALJ discounted the opinions of his treating sources and gave preference to the opinions of the consultative examiner and State Agency medical consultant. R. at 852–53. The ALJ, nevertheless, found Garcia was unable to do his prior relevant work as a well driller and a maintenance mechanic. R. at 857.

Based on the RFC provided by the ALJ, the vocational expert (VE) testified at the hearing that Garcia could perform the sedentary job of telephone quotation clerk and charge account clerk and the sedentary to light jobs of production assembler and small product assembler.[5] R. at 922–23. However, the VE stated that these jobs would not allow Garcia to take ten-minute breaks every hour, to stand in place after sitting for 20 minutes, or to miss more than two days per month. R. at 923–24. She also confirmed that Garcia would not be employable if he was off task for 20 percent or more of the workday. Ultimately, the ALJ concluded that Garcia was not disabled, because he was capable of performing jobs that exist in significant numbers in the national economy. R. at 858.

### III. Discussion

With his second bite of the apple, the ALJ feigned compliance with Judge Jackson's order but, once again, did not properly assess the opinions of Garcia's treating sources or sufficiently include Garcia's limitations from his mental impairments in his RFC.

### A. Medical Opinions

The ALJ's findings regarding the weight to accord the medical opinions of Garcia's treating and non-treating sources are replete with errors. The ALJ improperly discredited all of the treating sources' opinions, because they were "*not consistent* with the other medical evidence in the record." R. at 848 (internal quotations marks omitted). In addition, he erroneously gave "less weight" to their opinions than to those of Dr. Steinhardt and Dr. Sever based primarily on improper considerations, including their relative knowledge of Social Security programs, their familiarity with Garcia's complete medical records, Dr. Kesten's range of motion measure-

---

5. Significantly, the VE did not testify that any of the jobs allow for the use of a stool even though the ALJ found that she did. R. at 858.

ments, and whether their opinions were provided in the workers' compensation context. R. at 853–54. Lastly, in obvious error, he found that Dr. Disorbio, who treated Garcia for five months in 2004, was not a treating source. R. at 853.

### 1. "Not Inconsistent"

██ The opinions of treating sources are generally entitled to more weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In deciding whether to give treating-source opinions "controlling weight," an ALJ must first consider whether the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 404.1527(c)(2), 416.927(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). And, if it is, then the ALJ must find that the opinion is *"not inconsistent"* with other substantial evidence in the record.[6] 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ in this case found that the opinions of Garcia's treating sources were not *consistent* with the opinions of Drs. Sever and Steinhardt, which he deemed to be substantial evidence. The distinction between *not inconsistent* and *consistent* is significant. The treating source opinions should not be accorded controlling weight if they contradict other substantial evidence in the record, but they do not necessarily have to reach the exact same conclusions. *Id.* at *3. Using boilerplate language, the ALJ found that the opinions of "at least one State Agency medical consultant" and "at least one Consultative examiner" that Garcia's

limitations did not preclude him from substantial gainful activity were not consistent with the treating sources' opinions.[7] R. at 848. He did not elaborate. First, opinions on issues reserved to the Commissioner should be irrelevant for the controlling weight analysis, as opinions on such matters cannot be awarded controlling weight regardless of whether they are inconsistent. *See* SSR 96–5p, 1996 WL 374183, at *2. Second, Dr. Kesten's opinion on matters not reserved to the Commissioner was not inconsistent with the opinions of Drs. Sever and Steinhardt. Dr. Kesten merely added the additional limitations that Plaintiff would need to be absent from his workstation every hour for five to ten minutes and would likely miss four or more days a month due to his impairments. R. at 646–647. The ALJ erred in applying the improper legal standard for evaluating the opinions of treating sources.

Furthermore, the opinions of Drs. Sever and Steinhardt do not constitute substantial evidence. They are overwhelmed by other evidence in the record, including Garcia's testimony and the medical opinions of Drs. Kesten, Barolat, and Zierk. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). The opinions of Garcia's treating sources are thus entitled to controlling weight.

### 2. Evaluation of the Factors

██ Even if the treating source opinions were inconsistent with other substantial evidence in the record, the ALJ did not

---

6. In *Watkins v. Barnhart*, 350 F.3d at 1300, a Tenth Circuit panel stated that an ALJ "must confirm that the opinion is consistent with other substantial evidence in the record" but cited to Social Security Ruling 96–2p, which explains the standard: "Not inconsistent. This is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent

with all of the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." 1996 WL 374188, *3.

7. The ALJ's Decision is full of such non-specific language and indiscreetly contains a "sample" section that cites to "Ex. XX." R. at 857.

properly evaluate the relative weight the opinions should be given. When an ALJ determines that a treating source's opinion is either not well-supported or inconsistent with other substantial evidence, then he or she must consider six factors to establish the amount of weight to accord the opinion. 20 C.F.R. §§ 404.1527, 416.927. The ALJ is required to use the same factors to evaluate the medical opinions of non-treating sources as well. *Id.* The factors are: (1) the examining relationship between the physician and the applicant; (2) the length, nature, and extent of the treatment relationship; (3) the evidentiary support for the opinion; (4) the consistency of the opinion with the record as a whole; (5) the medical source's specialty; and (6) other factors, such as the source's understanding of Social Security disability programs and the extent to which the source is familiar with other information in the record. *Id.* Judge Jackson specifically ordered the ALJ to reconsider Dr. Kesten's opinion using these factors. R. at 984. Nevertheless, instead of applying the actual factors, the ALJ improperly relied on considerations he assumed favored Drs. Steinhardt and Sever and made findings that are not supported by substantial evidence.

The ALJ does not even mention factor one, the sources' examining relationship, or factor five, the source's specialization, in his analysis, both of which would likely undermine the ALJ's findings. All of the treating sources and Dr. Zierk actually examined Garcia, but Dr. Steinhardt did not. The treating sources and Dr. Zierk were also specialists in the areas in which they provided treatment,[8] while there is no evidence in the record regarding the specializations of either Dr. Steinhardt or Dr.

Sever. As to the remaining factors, the ALJ either did not perform any legal analysis or his findings are not supported by substantial evidence.

*Treatment Relationship, Supportability, & Consistency*

With regard to the second factor, the source's treatment relationship with Garcia, the ALJ stated:

> One of the regulatory factors I am to consider is whether any such opinions came from a treating source; and if so, the nature, extent, and length of the treatment relationship. In this case, the record includes treating source opinions. Thus, I have applied this factor, and as a result I give weight to such opinions for this reason. The weight I assign is based on the nature, extent, and length of the treatment relationship with claimant. Accordingly, I give weight to the treating source opinions for this reason.

R. at 853. This is not legal analysis. The ALJ does not mention the name of a single medical source or the actual nature, extent, or length of his or her treatment relationship with Garcia.

Similarly, the ALJ performed no legal analysis with respect to the third factor, supportability. He merely stated:

> In this case, these medical sources presented more relevant supporting evidence, and provided more satisfactory supporting explanations, for the opinions given. As a result, I have given more weight to these medical source opinions for this reason.

R. at 852. It is unclear to which opinions the ALJ was referring, as he never mentioned any specific medical source in that paragraph or the preceding one. He also

---

**8.** Dr. Kesten is Board Certified in physical medicine and rehabilitation, pain medicine, and addiction medicine. R. at 686. Dr. Barolat is Board Certified in Neurological Surgery. R. at 1170. And, Drs. Disorbio and Zierk are licensed clinical psychologists. R. at 633, 657.

conflated supportability and consistency, stating: "The less a medical source opinion is supported by the relevant medical and other evidence, the less weight I will give to that opinion... [T]he relevant evidence does not support these opinions to the same degree as it supports the medical source opinions cited earlier in this decision." R. at 854. The third factor is meant to evaluate whether the medical source provides sound reasoning and medical signs and laboratory findings to support his opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). It is not to be duplicative of the fourth factor, consistency with the record as a whole.

As discussed above, the ALJ asserted that the treating source opinions were not consistent with the "substantial evidence" of the opinion of "at least one Consultative Examiner" and "at least one State Agency medical consultant." R. at 848. These statements are on an entire page full of boilerplate language that does not mention a specific name, circumstance, or fact unique to this case. *Id.* Once again, these assertions by the ALJ do not constitute legal analysis and are in no way rigorous enough to be consequential for review of his decision.

The ALJ additionally found Dr. Kesten's opinion was entitled to little weight, because he reported inconsistent values for range-of-motion tests a few times in hundreds of pages of medical records. R. at 854. Yet, the ALJ did not ask Dr. Kesten about these discrepancies at the first hearing and just assumed that they were due to error. " 'In choosing to reject the treating physician's assessment, an administrative law judge may not make speculative inferences from medical reports and may reject the opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility, judgments, speculation, or lay

opinion.' " *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Perhaps the discrepancies in the range-of-motion measurements would provide sufficient grounds for the ALJ to discredit the actual range-of-motion measurements, but the ALJ is not authorized to speculate why the discrepancies occurred or to fully discredit a treating source's opinion because of them.

*Other Factors*

Instead of analyzing the enumerated regulatory factors, the ALJ chose to rely on the "other" category, which lists considerations that are clearly aimed at evaluating the opinions of State agency consultants and consultative examiners. The "other" factors the ALJ found to be particularly important are (1) "whether the opinions come from medical sources who are experts in the evaluation of Social Security Administration (SSA) disability claims," and (2) "the extent to which a medical source is familiar with the other medical information in the claimant's record." R. at 853–54.

The ALJ's findings as to the medical sources' expertise in SSA disability programs are wholly unsubstantiated. Although the regulations do provide: "State agency medical and psychological consultants ... are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation," 20 C.F.R. § 404.1527, there is no evidence in the record that Drs. Sever or Steinhardt had any particular knowledge of the Social Security programs. *See Gustafson v. Astrue*, No. 11–cv–00477–LTB, 2012 WL 899272, at *12 (D. Colo. Mar. 14, 2012) (finding that a conclusory assertion that a non-examining source has knowledge of Social Security programs was not supported by

substantial evidence). The ALJ simply assumed that the State agency medical consultant and the consultative examiner had more knowledge of the Social Security programs than the treating sources and Dr. Zierk. R. at 852. This finding is not supported by the evidence in the record and is not a legitimate reason for discounting treating source opinions. *See Gravina v. Astrue,* No. 10–cv–6753, 2012 WL 3006470, *5 (N.D. Ill. July 23, 2012) ("[I]f an ALJ can reject a treating physician's opinion simply because a non-treating, non-examining doctor is more familiar with the disability standards, he would be granting favored status to the non-treating doctor that is unsupported by the regulations.").

Likewise, the ALJ asserted that "there is no evidence that any treating source reviewed any medical records other than their own." This statement is completely false, which the ALJ conceded at the first hearing when he stated that Dr. Kesten: "quotes at length from various documents." R. at 60. In contrast, the reports of both Dr. Sever and Dr. Steinhardt suggest they had reviewed almost none of Garcia's records. R. at 542 (Dr. Sever: "REVIEW OF RECORDS: Broncos Sports Medicine Rehab report dated May 5, 2009"); R. at 102 (Dr. Steinhardt: "The CE MD's [Medical Source Statement] is supported by findings and is the only medical opinion in the file."). The ALJ's finding that the "other" factors supported according greater weight to the opinions of Drs. Sever and Steinhardt is unfounded. In assessing the medical opinions in the record, the ALJ performed minimal legal analysis and focused on factors that he presumed, instead of determined, would support according less weight to the opinions of Garcia's treating sources and Dr. Zierk.

*Workers' Compensation Bias*

The ALJ concluded his discussion of the medical source opinions by providing his thoughts on medical opinions emanating from the workers' compensation system. He stated:

> For the following reasons, I find that the WC medical opinions are entitled to less weight than the opinions of other medical sources in evidence in this claim. First, WC medical opinions must be considered in the context in which the opinions are requested and generated. Unlike the federal Social Security Disability system, state workers' compensation systems are adversarial in nature. Most WC medical sources are selected, and their opinions solicited, by either the employer or the employee. Second, the social security disability and workers' compensation systems have different standards regarding functional capacity and the ability to work. Third, WC medical opinions typically consider only the specific job the employee was performing at the time of injury. Fourth, the weight to give a WC medical opinion or report will vary, depending on its type or category.

R. at 856. As a footnote to the preceding statements, the ALJ asserted: "Periodic progress reports are entitled to the least amount of weight. I give more weight to reports that opine that the claimant has reached maximum medical improvement, that assess the claimant's impairments, and that impose work restrictions. I give the most weight to a report prepared by a 'Division Independent Medical Examiner.'" The ALJ's theories regarding the workers' compensation system are disconcerting, since he admittedly is "not familiar with workers' comp, [and hasn't] been for some time." R. at 51.

The ALJ is correct that most workers' compensation medical sources are selected, but the same could be said about all medical sources. In the Social Security context, either the claimant or the SSA selects the

medical source. The mere fact that they are "selected" does not in any way support the assertion that such opinions should be accorded less weight. Furthermore, in Colorado, claimants injured on the job are generally required to see providers designated by their employer or the employer's insurer. Colo. Rev. Stat. § 8–43–404(5); *Bunch v. Indus. Claim Appeals Office*, 148 P.3d 381, 383 (Colo. App. 2006). Because the workers' compensation system is adversarial, it follows that the opinions from providers designated by the adverse party should be entitled to greater weight when favorable to the claimant [9] and should be reviewed more carefully when unfavorable. In addition, while it is true that workers' compensation standards differ from the Social Security disability standard, the limitations provided by a workers' compensation medical provider are relevant in determining a claimant's RFC. In fact, as Dr. Kesten explained, the limitations provided in the workers' compensation context are likely to overestimate the capability of the claimant so that he or she is not hindered in attempting to work. R. at 87 ("I like not to limit a patient's opportunities vocationally. So even if I don't expect that they will return to full duty employment, either with or without restrictions, ... I feel that by rendering somewhat liberal restrictions, at least it enhances the patient's opportunity to potentially secure any employment."). Lastly, the ALJ's footnote explaining to which medical opinions he accords the most weight completely contradicts the legal standard. Opinions in periodic progress reports and MMI reports should usually be given controlling weight if they are from a treating source, bearing in mind the treating source was likely chosen by the employer or the employer's insurer. On the other hand, Division Independent Medical Examination reports should generally be given less weight, because the exam is not performed by a treating source with a significant relationship to the claimant. The ALJ's rules for workers' compensation opinions contradict the Social Security regulations and, if applied, would unfairly disadvantage workers injured on the job by not allowing them to benefit from the deference given to treating sources.

■ The ALJ improperly applied the legal standard in weighing the opinions of Garcia's medical sources. Judge Jackson specifically directed him to closely adhere to the standard, and he refused to do so. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994)). It is clear the ALJ sought to circumvent this doctrine.

Dr. Kesten treated Garcia's left leg and lumbar injuries on and off for a period of at least eight years, eventually determining that Garcia would require absence from his workstation every hour for five to ten minutes and would likely be expected to miss more than four days of work per month. R. at 646–648. This opinion is entitled to controlling weight. *See Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 2011) (holding that specific work-related functional limitations are not issues reserved to the Commissioner and should be given controlling weight when determined by a treating physician). Further, the reg-

---

**9.** In this case, Garcia had to wait one and a half days until he was referred to the "compa- ny doctor," who through a chain of referrals led to Dr. Kesten. R. at 650.

ulatory factors weigh heavily in favor of according great weight to the opinions of Garcia's treating sources and Dr. Zierk, including those on Garcia's disability status.[10]

### B. Other Issues Raised on Appeal

The above errors are sufficient to mandate reversal with the direct award of benefits. Thus, I find it unnecessary to address each of the additional issues Garcia raises. I will note, however, that if I were not ordering the direct award of benefits, the ALJ's repeated failure to include adequate limitations for Garcia's mental impairments in his RFC and his improper assessment of Garcia's credibility would warrant remand of the case.

 The ALJ limited Garcia to work at a specific vocational preparation level of five, but in determining his RFC, he did not specifically address Garcia's limitations from his post-traumatic stress disorder, depression, or anxiety. The Commissioner contends that, in *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015), the Tenth Circuit rejected Garcia's argument that an SVP level does not adequately account for his mental limitations. However, the claimant in *Vigil* was limited to an SVP level of one or two and only suffered from moderate concentration, persistence, and pace problems. *Id.* In contrast, Garcia was limited to an SVP level of five, which is skilled work, and the ALJ found him to have mild difficulties in maintaining social functioning and with concentration, persistence, or pace. Additionally, Dr. Zierk noted that Garcia had "increased problems with attention, concentration, coping and stress management, motivation, and organization-

al skills," R. at 626, and Dr. Kesten opined "it is quite likely Mr. Garcia would miss 4 or more days a month from work." R. at 647. The Court recognized, in *Vigil*, that "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." 805 F.3d at 1204. This is one of those cases. Garcia's mental limitations are not adequately accounted for by the SVP level in his RFC.

 In evaluating Garcia's credibility, the ALJ did not consider all the factors set forth in sections 404.1529 and 416.929 of Title 20 of the Code of Federal Regulations, as required. He did not take into account that the objective medical evidence substantiated many of Garcia's allegations. *See* 20 C.F.R. §§ 404.1529(c)(2) 416.929(c)(2). For example, the ALJ noted that Dr. Castro found severe degenerative changes in Garcia's lumbar spine, but did not acknowledge that such an objective medical finding corresponds with Garcia's pain complaints. The ALJ also ignored the opinions of Dr. Kesten, Dr. Zierk, Dr. Disorbio, and Occupational Therapist Mellon that Garcia put forth adequate effort throughout their treatment and was credible. R. at 376, 621, 652, 828. In addition, the ALJ improperly substituted his judgment for that of a medical source by finding that Garcia's varying range-of-motion measurements demonstrated he was not credible. *See McGoffin*, 288 F.3d at 1252. Dr. Kesten described the range-of-motion differences, stating:

> Not only do variations in lumbosacral and peripheral range of motion measurements ... fail to suggest malingering, symptom magnification, and/or sec-

---

**10.** Social Security Ruling 96–5p provides that, even though treating source opinions on issues reserved to the Commissioner are not entitled to controlling weight, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." 1996 WL 374183, at *2; *see also* SSR 03–2p, 2003 WL 22399117, at *8 n.3.

ondary gain, but are, in fact, expectedly reflective of variations in Mr. Garcia's clinical course, treatment rendered, and functional status.

R. at 828. Instead of crediting Dr. Kesten's opinion on the matter, the ALJ simply speculated that the variances were due to Garcia's symptom exaggeration. The ALJ's credibility judgments "by themselves 'do not carry the day and override the medical opinion of a treating physician that is supported by the record.'" *McGoffin*, 288 F.3d at 1252 (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Apart from his improper findings on the weight to accord medical source opinions, the ALJ erred in not sufficiently including limitations for Garcia's mental impairments in his RFC and in evaluating his credibility. If I were not ordering the direct award of benefits, these issues would need to be remedied on remand.

## IV. Conclusion

■ The ALJ's decision in this case is perturbing. He seemingly penalizes Garcia for striving to turn his life around and move past his injury. The ALJ mentions Garcia's high grade point average multiple times as evidence that he could not be disabled. R. at 839, 845. He also dwells on Garcia not taking the opiate pain medication he was prescribed, without taking into account the substance abuse issues from which he had suffered in the recent past. R. at 68, 572, 600, 844–845, 898–899. A claimant should not be penalized for working to improve his life and wanting to be "sober-minded." R. at 892. I am also troubled by the ALJ turning the treating source rule on its head. He endorsed only according the most weight to the opinions of medical sources with specific knowledge of Social Security standards and advocated for giving less weight to the opinions of workers' compensation doctors. Ideally, claimants seek treatment when they have an impairment and receive continued care from a medical source. That source's opinions regarding the claimant's condition are the most reliable and should not be discounted merely because they were provided in the workers' compensation context. Additionally and perhaps most distressingly, the ALJ refused to comply with an order of this Court. Judge Jackson remanded this case with the specific instruction that the ALJ correctly apply the regulatory factors, and instead, the ALJ performed minimal legal analysis and used only factors he assumed would justify his findings.

■ The record in this case fully supports a determination that Garcia is disabled. The ALJ has had two opportunities to properly apply the law and to rule in accordance with the substantial evidence in the record and has failed to do so. Furthermore, Garcia has been seeking benefits for well over six years and should not be subject to additional delay. "Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (citing *Williams v. Bowen*, 844 F.2d 748, 760 (10th Cir. 1988). In this case, the evidence overwhelmingly establishes Garcia has additional limitations not reflected in the ALJ's RFC. When posed those additional limitations, the VE testified that there would be no jobs in the national economy that Garcia could perform.

I, therefore, REVERSE the determination of the Commissioner through the ALJ that Garcia is not disabled. The case is REMANDED to the Commissioner for an immediate award of benefits.