**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 2, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CIMBERLY COVINGTON,

     Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant - Appellee.

No. 16-4062
(D.C. No. 2:13-CV-00849-PMW)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

Cimberly Covington appeals from a district court order affirming the

Commissioner's denial of her applications for disability insurance and Supplemental

Security Income benefits. Exercising jurisdiction under 28 U.S.C. § 1291 and

42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I.**

In her applications, Ms. Covington alleged a disability beginning in September 2007. At step two of the sequential evaluation process, *see Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988), the ALJ found that she has the severe impairments of degenerative disc disease, obesity, depression, and anxiety. At step three, he found that she does not have impairments, alone or in combination, that meet or medically equal the listings. As relevant here,[1] in formulating her residual functional capacity (RFC), the ALJ determined that she has mild mental limitations in some areas and no mental limitations in other areas. In particular, the ALJ found that Ms. Covington is mildly limited in her ability to concentrate, exercise judgment, follow detailed instructions, perform duties within a schedule, sustain a routine without supervision, relate to others, interact with the general public, deal with work production, and deal with stress. The ALJ found that Ms. Covington has no limitation in her ability to use memory, understand, remember work procedures, follow simple instructions, and interact with co-workers. The ALJ found that Ms. Covington's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment.

The ALJ found at step four that Ms. Covington could perform her past relevant work, and at step five he determined that there are other jobs in the national economy

---

[1] Ms. Covington does not raise any issue on appeal with respect to her physical impairments.

that she could perform. Consequently, the ALJ found that Ms. Covington was not disabled. The Appeals Council denied her request for review, and the district court affirmed the Commissioner's decision.

## II.

Ms. Covington raises three issues on appeal: (1) the ALJ's RFC is not supported by substantial evidence; (2) the ALJ did not give sufficient reasons for discounting certain medical opinions in the record; and (3) the ALJ's hypothetical question to the vocational expert (VE) was flawed. "We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## A.

Ms. Covington contends that the RFC formulated by the ALJ is not supported by substantial evidence. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion. . . . However, we may neither reweigh the evidence nor substitute our discretion for that of the [Commissioner]." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

3

**1.**

Here, the ALJ found that Ms. Covington has only mild or no limitations in specified aspects of mental functioning. She asserts, to the contrary, that she is significantly limited in the areas of social functioning and concentration, persistence, and pace. Ms. Covington bases this contention on her own statements, as well as certain medical opinions in the record. She points to the opinions of Drs. McWilliams and Cohn, state agency non-examining doctors who opined that she has some moderate mental limitations, and Dr. Hardy, a consultative examiner who opined that she would have difficulty staying focused on a consistent basis.

Ms. Covington contends that the evidence the ALJ relied on amounts to a mere scintilla. Specifically, she maintains that the ALJ formulated her RFC based solely on (1) evidence of some of her daily activities, including reading the newspaper and other materials, doing crossword puzzles, and watching television; (2) her statements to Mr. Olsen, a social worker, that she would like to learn to work with people and that she is a "people person," Aplt. App., Vol. I at 43; and (3) evidence that she canceled or missed six appointments for counseling sessions at Valley Mental Health. Ms. Covington asserts that this evidence is overwhelmingly outweighed by the medical opinion evidence from Drs. McWilliams, Cohn, and Hardy. But the ALJ did not give full weight to any of these opinions, and as we explain below, Ms. Covington fails to show error in the ALJ's treatment of these opinions. Ms. Covington also argues that the evidence the ALJ cited regarding her daily activities is insubstantial in light of her other statements that she says demonstrate

4

more significant mental limitations than found by the ALJ. We note that she did not make this precise argument in the district court. In any event, the ALJ found that Ms. Covington's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not [entirely] credible," *id.* at 46, and she does not challenge the ALJ's adverse credibility decision on appeal.

Ultimately, Ms. Covington's contention fails because the ALJ did not rely solely on the evidence she cites, and she ignores the other evidence that the ALJ discussed in support of her RFC. This includes a doctor's notes from her emergency room visit in March 2011, reporting that she was "alert, responsive, and acting appropriately," "appear[ed] to have good judgment and insight," "ha[d] good recent and remote memory," and that there was "no evidence of depression, unusual anxiety, or agitation." *Id.* at 48 (internal quotation marks omitted). The ALJ also pointed to evidence that Ms. Covington's prescribed medications had been relatively effective in controlling her mental symptoms. On this issue, the ALJ cited notes from her treating physician, Dr. Valentine, indicating that her depression and anxiety were reasonably or fairly controlled and quoting her own report that a particular medication "works well for her." *Id.* (internal quotation marks omitted). In addition, the ALJ referenced other comments in Dr. Valentine's treatment notes, suggesting that Ms. Covington had not always taken her medications consistently and that the information she provided to Dr. Valentine may not be entirely reliable. Further, Dr. Ingebretson, a consultative examiner, reported in May 2010 that Ms. Covington "demonstrated the ability to reason and to concentrate and to remember and to follow

5

commands." *Id.* at 49 (internal quotation marks omitted). Overall, the ALJ concluded that the medical evidence in the file was "relatively weak." *Id.* at 48. Ms. Covington does not advance an argument that all of the evidence relied on by the ALJ is not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

**2.**

Ms. Covington also contends that the ALJ's decision is internally inconsistent because he found at step three that she has moderate limitations in activities of daily living, yet his RFC included only mild or no mental limitations. She maintains that the ALJ's RFC is therefore "not truly reflective of a severe mental impairment," as the ALJ found her depression and anxiety to be at step two. Aplt. Opening Br. at 25.

Ms. Covington's argument misconstrues the sequential evaluation process, under which the ALJ applies different standards at steps two, three, and four. To find a "severe" impairment at step two requires only a threshold showing that the claimant's impairment has "more than a minimal effect on [her] ability to do basic work activities." *Williams*, 844 F.2d at 751. At step three, the ALJ applies the so-called "paragraph B" criteria to determine whether the claimant's impairment meets or equals a listed impairment. *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015); *see also* 20 C.F.R. §§ 404-1520a(c)(3), 416.920a(c)(3) (listing "broad functional areas" evaluated at step 3, including "[a]ctivities of daily living; social functioning; [and] concentration, persistence, or pace"). Regarding this third step, "[t]he social security ruling on assessing a claimant's RFC cautions that 'the

6

adjudicator must remember that the limitations identified in the paragraph B criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.'" *Vigil*, 805 F.3d at 1203 (quoting SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)) (brackets and ellipsis omitted). Thus, we have noted that "[t]he ALJ's finding of a moderate limitation . . . at step three *does not necessarily* translate to a work-related functional limitation for the purposes of the RFC assessment." *Id.* (emphasis added). Then, at the "more detailed step four assessment," *id.* (internal quotation marks omitted), the ALJ determines whether a claimant's specific functional limitations make her unable to perform her past relevant work, *Williams*, 844 F.2d at 751.

Ms. Covington does not develop her inconsistency argument in her opening brief (and her discussion of this issue in the district court was likewise perfunctory). *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (stating that "perfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review"). In particular, she does not contend that the ALJ's RFC fails to account for the moderate problems that he found in her activities of daily living at step three. *See Vigil*, 805 F.3d at 1203-04 (holding that claimant's moderate limitation in concentration, persistence, and pace was accounted for in RFC limiting claimant to unskilled work). Rather, her argument focuses exclusively on whether the RFC sufficiently reflects her limitations in the areas of social functioning and concentration, persistence, and pace. *See* Aplt. Opening Br. at 25-29. And we decline to address her contentions regarding her limitations related to activities of

daily living, which she raises for the first time in her reply brief. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).

**B.**

Ms. Covington next contends that the ALJ erred in evaluating certain medical opinions. "It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citation omitted); *see also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) ("[A]n ALJ must give good reasons for the weight assigned to a . . . physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . medical opinion and the reason for that weight." (internal quotation marks and ellipsis omitted)). Ms. Covington does not contend that the ALJ failed to discuss the medical opinions in the record; rather, she asserts that the ALJ gave insufficient or unclear reasons for discounting certain opinions.

**1.**

Ms. Covington first challenges the ALJ's treatment of a medical opinion from Dr. Valentine, her treating physician. But she forfeited this argument by not raising it in the district court. *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994).[2]

---

[2] Ms. Covington did not include Dr. Valentine's opinion in her list of issues on review in the district court, and although she mentioned Dr. Valentine's opinion in her argument regarding the ALJ's treatment of Dr. Hardy's opinion, she did not contend that the ALJ erred in his treatment of Dr. Valentine's opinion. *See* Aplt. App., Vol. II at 483-84, 488.

8

Because she fails to argue for plain-error review, we do not address this issue further. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal [] surely marks the end of the road for an argument for reversal not first presented to the district court.").

**2.**

Ms. Covington also contends that the ALJ insufficiently explained the weight he assigned to an opinion by Dr. Hardy, who stated, "At this point I see [Ms. Covington] as having significant challenges staying focused on a consistent basis although I only had the opportunity of seeing her functioning during this current evaluation." Aplt. App., Vol. I at 50 (internal quotations marks omitted). In weighing this opinion, the ALJ noted Dr. Hardy's observation that Ms. Covington's crying during the examination "interfered with her ability to remember certain elements of the mental status tasks." *Id.* (internal quotation marks omitted). The ALJ gave Dr. Hardy's opinion "less weight" because (1) he was not a treating physician, (2) "Dr. Hardy himself suggest[ed] his assessment may not be correct having seen [Ms. Covington] on this one occasion," and (3) "other evidence as reported throughout th[e] decision suggests the claimant does not have significant challenges staying focused." *Id.*

Ms. Covington maintains that the ALJ did not provide a reasonably detailed explanation for his treatment of Dr. Hardy's opinion, which she believes "likely supports marked limitations in at least one area of mental functioning." Aplt. Opening Br. at 29. But the ALJ cited three reasons for giving less weight to the

9

opinion, all of which touched on relevant factors: the extent of Dr. Hardy's relationship with Ms. Covington; the consistency between the opinion and the record as a whole; and Dr. Hardy's own stated uncertainty regarding the accuracy of his conclusions. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (noting ALJ must consider and weigh opinions of non-treating physicians based on regulatory factors); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c) (listing relevant factors, including "[o]ther factors . . . which tend to support or contradict the medical opinion"). Ms. Covington does not address two of the ALJ's reasons in her opening brief. Regarding consistency with the record as a whole, she argues only that the record supports Dr. Hardy's statement that she needs psychotherapy rather than simple follow-ups with her family practitioner. Thus, she fails to dispute the ALJ's conclusion that, contrary to Dr. Hardy's opinion, other evidence in the record suggested that she does not have significant challenges staying focused.[3]

Ms. Covington has not demonstrated that the ALJ did not give sufficiently specific, good reasons for the weight he assigned to Dr. Hardy's opinion.

---

[3] Ms. Covington also submits that, by giving Dr. Hardy's opinion "less weight," it is unclear how much weight the ALJ assigned to it. But she fails to develop any argument of error here, and we will not construct one for her. *See Murrell*, 43 F.3d at 1389 n.2.

**3.**

Ms. Covington asserts that the ALJ also erred in his treatment of the opinions of the state agency physicians, Drs. Cohn and McWilliams.[4]  The ALJ stated that he gave these opinions some weight because they supported a finding that Ms. Covington is not disabled.  She contends this was error because the ALJ is required to do a function-by-function analysis before deciding whether a claimant is disabled.  But she does not show that the ALJ failed to do the required analysis in her case, nor does she explain how this contention relates to the ALJ's weighing of the Cohn/McWilliams opinions.  We are also unpersuaded by Ms. Covington's contention that the ALJ's rationale in weighing these opinions is insufficient to permit reasonable review.  *See Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000).

Moreover, even if Ms. Covington could show error in the ALJ's treatment of the opinions of Drs. Cohn and McWilliams, she cannot demonstrate any prejudice.  She contends that these opinions support a finding that she has significant mental limitations.  But as the government points out, these doctors opined that Ms. Covington is capable of doing simple work with limited public contact.  *See* Aplt. App., Vol. II at 411 (Dr. Cohn's opinion); *see also id.*, Vol. I at 121-24

---

[4] After initially stating that "the ALJ discussed all the medical opinions in the record," Aplt. Opening Br. at 32, Ms. Covington changes tack here and states that it is unclear from the ALJ's decision whether he considered Dr. McWilliams' opinion. The district court rejected this contention, noting that the ALJ considered and weighed Dr. Cohn's opinion, which fully endorsed Dr. McWilliams' earlier opinion. The court therefore held that the ALJ implicitly accorded the opinions of Drs. Cohn and McWilliams the same weight.  Ms. Covington does not acknowledge or attempt to show error in the district court's reasoning on this issue.

(Dr. McWilliams' narrative explanations of Ms. Covington's mental limitations). The ALJ included similar limitations in Ms. Covington's RFC with regard to her ability to follow detailed instructions, concentrate, exercise judgment, sustain a routine without supervision, deal with work production and stress, relate with others, and interact with the general public. Consequently, giving these opinions greater weight would not have helped her. *See Keyes-Zachary*, 695 F.3d at 1163 (holding ALJ's failure to expressly weigh medical opinions was harmless error where "[t]here [was] no reason to believe that a further analysis or weighing of [an] opinion could advance [the claimant's] claim of disability"). Therefore, any error by the ALJ in explaining his treatment of the Cohn/McWilliams opinions was harmless.

**4.**

Finally, Ms. Covington challenges the ALJ's reasoning in giving "considerably less weight to a specific GAF score than to the bulk of other, more convincing evidence." Aplt. App., Vol. I at 48. "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Langley*, 373 F.3d at 1122 n.3 (quoting Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* ("*DSM-4*") 32 (Text Rev. 4th ed. 2000)). We have said that GAF scores prepared by an acceptable medical source qualify as medical opinions. *Keyes-Zachary*, 695 F.3d at 1164.

12

The ALJ noted that Ms. Covington's GAF scores had ranged from 45 to 55.[5]

He explained the weight he assigned to her GAF scores as follows: "The GAF score represents a particular clinician's subjective evaluation at a single point in time. The GAF score may vary from day to day, from time to time, and between practitioners. Finally, the GAF score is not designed for adjudicative purposes." Aplt. App., Vol. I at 48. Ms. Covington does not dispute the accuracy of the ALJ's statements regarding GAF scores. She instead contends that these general comments are an insufficient basis for the ALJ to assign all of her GAF scores "considerably less weight." But she cites no legal authority for this proposition. *See Phillips v. Calhoun*, 956 F.2d 949, 953 (10th Cir. 1992) (declining to consider appellate position that was not "minimally supported by legal argument or authority").[6]

More specifically, Ms. Covington has not demonstrated error in the ALJ's treatment of the GAF scores assessed by Mr. Olsen, a licensed social worker. As she acknowledges, Mr. Olsen is not an acceptable medical source. His opinions therefore do not constitute "medical opinions." *Keyes Zachary*, 695 F.3d at 1164. And

---

[5] "A GAF score of 51-60 indicates 'moderate symptoms,' such as a flat affect, or 'moderate difficulty in social or occupational functioning.' A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Langley*, 373 F.3d at 1122 n.3 (quoting *DSM-4* at 34) (citation omitted).

[6] We note that the most recent edition of the *DSM* omits the GAF scale "for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

although an ALJ must consider the opinions of a non-acceptable source, the ALJ's decision is sufficient if it allows a court to follow the adjudicator's reasoning in doing so. *See id.* Here, the ALJ explained the weight he assigned to the GAF scores assessed by Mr. Olsen. The ALJ did not, as Ms. Covington asserts, "simply disregard" Mr. Olsen's opinion. Aplt. Opening Br. at 35.[7]

## III.

The judgment of the district court is affirmed.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[7] We do not address Ms. Covington's final contention, that the ALJ's hypothetical question to the VE was flawed. She did not raise this issue in the district court, nor does she argue for plain-error review on appeal. This contention is therefore forfeited. *See Richison*, 634 F.3d at 1130-31.